IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-860-FL

| | |
|---|---|
| DIANE LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| EATON CORPORATION DISABILITY ) | |
| PLAN FOR U.S. EMPLOYEES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DE 33, 35). The issues raised are ripe for ruling. For the following reasons, the court grants plaintiff's motion for summary judgment and denies defendant's motion.

## STATEMENT OF THE CASE

Plaintiff initiated the instant action by complaint filed October 20, 2016, alleging that she is entitled to recover long-term disability benefits, or is entitled to a review of her application for long-term disability benefits, under a group insurance policy ("plan") issued by defendant, pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] On May 24, 2017, defendant filed the administrative record for this case under seal. (DE 24-32). On June 9, 2017, defendant filed the instant motion for summary judgment arguing in part that

---

[1] Plaintiff also alleged that she is entitled to recover short-term disability benefits but has since abandoned that claim as time barred. (See DE 1, DE 36 at 1).

because plaintiff did not apply for and receive 26 weeks of short-term disability benefits (six months or 182 days), as required under the plain language of the plan, she did not qualify to receive long-term disability benefits and her application for those benefits was correctly denied. On June 12, 2017, plaintiff filed her instant motion for summary judgment, arguing in part the plain language of the plan does not require a claimant to apply for and receive six months of short-term disability benefits before applying for long-term disability benefits. Plaintiff seeks a determination on the record that she is entitled to long-term disability benefits or that she is entitled to remand of her case for reconsideration of her application for long-term disability benefits.

## STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts as relevant to the instant motions may be summarized as follows. On November 8, 1999, plaintiff began working for the Eaton Corporation. (Admin. R. at 961). On October 25, 2014, plaintiff stopped working at the direction of her physician and was determined by the plan to be qualified as of that day to receive short-term disability benefits through January 15, 2015. (Id. at 1014). On January 19, 2015, due to the nature of plaintiff's disability, the plan extended short-term disability benefits until January 31, 2015, but informed plaintiff she would need to submit additional medical evidence to support additional short-term disability benefits. (Id. at 1017). On February 16, 2015, the plan informed plaintiff that because she failed to submit additional medical evidence concerning her ongoing disability, she no longer qualified for short-term disability benefits effective February 1, 2015. (Id. at 1021).

On February 28, 2015, plaintiff appealed the denial of her continued short-term disability benefits to the plan's first level of administrative review, submitting medical documentation at that time. (Id. at 1112-24, 1130-33, 1152-54, 1164, 1230-31). Plaintiff submitted additional medical

2

evidence after receiving an extension of time to do so. (Id. at 1125-29, 1161-63). On April 3, 2015, the plan upheld the suspension of short-term disability benefits, finding plaintiff did not qualify for ongoing short-term disability benefits. (Id. at 1027-28).

On April 17, 2015, plaintiff appealed the denial of continued short-term disability to the plan's second level review, submitting additional medical evidence after receiving an extension of time to do so. (Id. at 1231-32, 1173-88). The plan again upheld the denial of continued short-term disability benefits on July 15, 2015. (Id. at 1036-38).

On December 17, 2015, plaintiff submitted a long-term disability benefits claim. (Id. at 1206-1219). The plan denied plaintiff's request on December 21, 2015, stating that because plaintiff had not qualified for and received six months of short-term disability benefits, she could not qualify for long-term disability benefits. (Id. 1094-95). Plaintiff appealed her denial through the plan's first level review. On February 12, 2016, in upholding the denial, the plan's first level review stated that "this is an administrative decision," "it is not based on a determination of whether or not [plaintiff] has met the definition of disability," and therefore "[a]dditional medical documentation is not relevant to the appeals decision." (Id. at 1104).[2] Plaintiff appealed her denial of long-term disability benefits through the plan's second level review. On June 9, 2016, in upholding the denial, the plan's second level review held "the Committee interprets the Plan as specifically requiring an individual to fully exhaust the six months of disability coverage as provided under the [short-term disability] plan," which plaintiff did not do. (Id. at 1285).

---

[2] During this time, plaintiff submitted additional medical records. (Id. at 1274-76, 1281-82).

3

# DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, ... and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.    Analysis

   1.    Standard of Review

The first issue to decide in a claim for review of denial of benefits under an ERISA plan is the correct standard of review to apply to defendant's decision. The default standard of review is de novo in ERISA cases in which a federal court is asked to review a plan administrator's determination. See Woods v. Prudential Ins. Co. of Am., 528 F.3d 320, 322 (4th Cir. 2008). Where the plan at issue confers discretionary authority on its administrator, a court must instead review the administrator's determinations only for abuse of discretion. Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008); Woods, 528 F.3d at 322. This court determines de novo whether the ERISA plan at issue confers discretionary authority on the administrator, and, if it does, whether the administrator acted within the poof that discretion. Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997).

In this case, the plan provides in relevant part:

> Benefits under the Eaton Plans will be paid only if the Plan Administrator and/or the appointed Claims Administrator decides that the applicant is entitled to them under the terms of the Plan. The Plan Administrator and/or the Claims Administrator has discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan, including but not limited to any disputed or doubtful terms. The Plan Administrator and/or Claims Administrator also has the power and discretion to determine all questions arising in connection with the administration, interpretation and application of the Plan. Any and all determinations by the Plan Administrator and/or Claims Administrator will be conclusive and binding on all persons, except to the extent reviewable by a court with jurisdiction under ERISA after giving effect to the time limits described in the "Claims Appeal Procedure" section of this booklet.

(Admin. R. at 1502). In this manner, the plan confers discretionary authority upon defendant to make benefit decisions according to the terms of the plan. "Under the abuse-of-discretion standard, we will not disturb a plan administrator's decision if the decision is reasonable, even if we would have come to a contrary conclusion independently." Williams v. Metro. Life Ins. Co., 609 F.3d 622, 630 (4th Cir. 2010).

However, "as a general proposition, ERISA plans, as contractual documents, see Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 638 (4th Cir. 1995), are interpreted de novo by the courts." Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 340 (4th Cir. 2000). "To the extent the administrator enjoys discretion to interpret the terms of a plan in the course of making a benefits-eligibility determination, such interpretive discretion applies only to ambiguities in the plan." Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 639 (4th Cir. 2007). "[D]iscretionary authority is not implicated [where] the terms of the plan itself are clear," Kress v. Food Emp'rs Labor Relations, 391 F.3d 563, 567 (4th Cir. 2004), and "[a]n administrator's discretion never includes the authority to read out unambiguous provisions contained in an ERISA plan," Blackshear, 509 F.3d at 639 (internal quotation omitted). Thus, the court must enforce "the plain language of an ERISA plan . . . in accordance with its literal and natural meaning." United

McGill Corp. v. Stinnett, 154 F.3d 168, 172 (1998) (internal quotation omitted).

    2.    The Plan

Here, the plan contains two separate sections for short-term disability benefits and long-term disability benefits. First, the plan provides that "[t]he Short Term Disability Plan provides you with continuing income for up to 26 weeks if a covered disability prevents you from working. If you are disabled longer than 26 weeks, additional benefits may be available under the Eaton long term disability plan." (Admin. R. at 1459). Under short-term disability benefits, the plan provides in part that a person may be eligible for short-term disability benefits if that person is covered by the plan and has a covered disability, defined as "an occupational or non-occupational illness or injury prevents you from performing the essential duties of your regular position with the Company or the duties of any suitable alternative position with the Company." (Id. at 1464).

Second, the plan provides that "[t]he Long Term Disability Plan provides a continued source of income if you are sick or injured and cannot work for an extended period of time. During the first 26 weeks of a covered disability, you may be covered by an Eaton Short Term Disability (STD) Plan. If you remain disabled after that time, you may receive a benefit from the Long Term Disability Plan." (Id. at 1469). The plan provides in part that a person may be eligible for long-term disability benefits if that person is covered by the plan and has a covered disability, defined as "unable to work as the result of an occupational or non-occupational illness or injury." (Id. at 1471). The plan additionally provides that the "work you are unable to do is defined differently over the course of a disability," and that a person will be considered disabled if:

| If During… | Your Disability Makes You… |
|---|---|
| Months 1 – 23, including six months of short term disability | Totally and continuously unable to perform the essential duties of your regular position or any suitable alternative position with the Company. |
| Month 24 until you are no longer disabled or retire | Totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience — at Eaton or elsewhere. |

(Id.). In order to make a claim for long-term disability benefits, the plan provides for a number of requirements or possible requirements under the heading "How to Obtain Benefits" including the following:

- You are required to complete and submit certain forms,
- You must complete the forms and return them to the Claims Administrator within 30 days of when you receive them,
- The forms . . . must be completed and returned to the Claims Administrator within one year of your last day of active work,
- [T]he Claims Administrator may require additional medical or other information,
- You must apply for Social Security Benefits as soon as the Claims Administrator determines you are eligible for them,
- If your initial application for Social Security Disability is denied, the Plan requires you reapply,
- Objective findings of a disability are necessary to substantiate the period of time your health care practitioner indicates you are disabled,
- If your claim is approved by the Claims Administrator, your health care practitioner will periodically be requested to submit updated medical information regarding your continuing disability, and
- The Claims Administrator may require you, from time to time, to undergo an independent medical examination . . . and/or a functional capacity evaluation.

(Id. at 1476-77). The plan additionally states that "[i]f you are receiving disability benefits from the Short Term Disability Plan, the Claims Administrator will mail the Long Term Disability Plan forms to you at the end of your fourth month of disability." (Id. at 1476). The plan states that "[t]he waiting period for the start of [long-term disability] benefits begins on the day you become disabled and continues for six months. During that time, you may be eligible for benefits under a Company

8

short term disability program." (Id. at 1474). Long-term disability benefit payments "begin on the day immediately following a six-month period which you have been absent from work due to a covered disability." (Id.).

3. Short-Term Disability Benefits Exhaustion Requirement

Defendant argues the plan requires a claimant, like plaintiff, to qualify for and receive six months of short-term disability benefits before she may qualify for long-term disability benefits. (DE 37 at 2-3). Here, because plaintiff only received short-term disability benefits from October 25, 2014, though February 1, 2015, defendant argues that plaintiff was correctly denied eligibility for long-term disability benefits.

Pursuant to the plain language of the plan, however, there is no basis to interpret the terms of the plan to require plaintiff to first exhaust short-term disability benefits before becoming eligible for long-term benefits. Nowhere in the plan is such a requirement written, and a claimant in plaintiff's position would have no indication that such was required based on the terms of the plan.

Every provision offered by defendant to support its interpretation supports only the position that a claimant must have been disabled for six months prior to receiving long-term disability benefits, not that a claimant also must have applied for and received short-term disability benefits. To support its position, defendant first emphasizes the following language from the plan, that "[t]he waiting period for the start of [long-term disability] benefits begins on the day you become disabled and continues for six months." (DE 34 at 4). These words in no way indicate that a person seeking long-term disability benefits must qualify for and receive six months of short-term disability benefits in order to able to apply for long-term disability benefits. Instead, these words state that a person must be disabled for six months and only then can that person begin to receive long-term disability

9

benefits. Nothing indicates that a person must be considered disabled for six months and additionally apply for and receive short-term disability benefits under the plan's short-term disability benefit system. In fact, the plan states in the same section that during the six month waiting period that has to occur before receiving long-term disability benefits, a claimant "<u>may</u> be eligible for benefits under a Company short term disability program," indicating a claimant may not be eligible and can still apply for long-term disability benefits. (<u>See</u> Admin. R. at 1474 (emphasis added)).

Defendant also turns the court's attention to the following language, that in order to be considered for long-term disability benefits, in months 1-23, "including six months of short term disability," the person seeking benefits must be "[t]otally and continuously unable to perform the essential duties of your regular position or any suitable alternative position." (DE 34 at 4 (citing Admin. R. at 1471)). In full context, the plan states the "work you are unable to do is defined differently over the course of a disability," and that a person will be considered disabled in order to receive long-term disability benefits:

| If During ... | Your Disability Makes You ... |
|---|---|
| Months 1 – 23, including six months of short term disability | Totally and continuously unable to perform the essential duties of your regular position or any suitable alternative position with the Company. |
| Month 24 until you are no longer disabled or retire | Totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience — at Eaton or elsewhere. |

(Admin. R. at 1471). Here again, the requirement that the person seeking long-term disability benefits <u>be disabled</u> for six months prior to application is not the same as a requirement that a person <u>apply for and receive</u> six months of short-term disability benefits. The plan makes clear that an

applicant for long-term disability benefits must be disabled for six months prior to such an application being granted, but this is a different requirement than an applicant having to apply and receive six months of short-term disability benefits under the plan.

Another section of the plan support this interpretation. See Johnson v. Amer. United Life Ins. Co., 716 F. 3d 813, 821 (4th Cir. 2013) ("ERISA plans, like contracts, are to be construed as a whole") (internal quotation omitted). Under the directions provided to apply for long-term disability benefits, the plan states that "[i]f you are receiving disability benefits from the Short Term Disability Plan, the Claims Administrator will mail the Long Term Disability Plan forms to you at the end of your fourth month of disability." (Admin. R. at 1476 (emphasis added)). The reverse scenario offered by this provision is that a person may not be receiving disability benefits from the short-term disability plan when applying for long-term disability benefits.

Plaintiff is entitled to a "full and fair review[]" of her claim for long-term disability benefits. See 29 U.S.C. § 1133; 29 C.R.F. § 2560.503-1. Therefore, the court will enter judgment remanding the case for defendant to consider plaintiff's application for long-term disability benefits, along with all medical evidence submitted by plaintiff previously not considered, to determine if plaintiff qualifies for long-term disability benefits including whether plaintiff had a qualifying disability for six months prior to the initiation of her long-term disability benefits application.[3]

## CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment (DE 35) is GRANTED, defendant's motion for summary judgment (DE 33) is DENIED, and this case is REMANDED for further administrative proceedings consistent with this order. The clerk is DIRECTED to close the case.

---

[3] The court does not address the viability of plaintiff's claim regarding the other requirements the plan contains to qualify for long-term disability benefits.

SO ORDERED, this the 12th day of December, 2017.

                                                                           _____
                                                                           LOUISE W. FLANAGAN
                                                                           United States District Judge